Nos. 22-56121, 22-56143

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**LARRY GRANT, et al.,**

Plaintiffs-Appellants,

vs.

**CITY OF LONG BEACH, et al.,**

Defendants-Appellees.

---

Appeal From The United States District Court
For The Central District Of California

Honorable James V. Selna

---

**APPELLEES' ANSWERING BRIEF**

---

MATTHEW M. PETERS, City Attorney (SBN 306959)
OFFICE OF THE LONG BEACH CITY ATTORNEY
411 West Ocean Boulevard, 9th Floor
Long Beach, California 90802
Telephone: (562) 570-2200
Facsimile: (562) 436-1579
matthew.peters@longbeach.gov

Attorneys For Defendants-Appellees,
CITY OF LONG BEACH, et al.

# TABLE OF CONTENTS

Page

**STATEMENT OF ISSUES** .......... **8**

**STATEMENT OF THE CASE** .......... **9**

I. THE RELEVANT UNCONTROVERTED FACTS .......... 9

II. RELEVANT PROCEDURAL HISTORY .......... 13

**STANDARD OF REVIEW** .......... **13**

**SUMMARY OF ARGUMENT** .......... **14**

**ARGUMENT** .......... **16**

I. THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' MONELL CLAIM .......... 16

II. THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM .......... 19

A. P.C. Cannot Maintain A Fourteenth Amendment Due Process Claim .......... 20

B. Mr. Grant's Substantive Due Process Claim Lacks Merit Because He Cannot Show A Deprivation Of A Liberty Interest .......... 21

C. Officer Rodriguez's Actions Did Not Shock The Conscience As A Matter Of Law .......... 25

D. There Is No Merit To Appellants' Claims As To Nonparty Sgt. Owens .......... 27

III. THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM .......... 27

IV. THERE WAS NO VIOLATION OF ANY CLEARLY ESTABLISHED LAW ....................32

V. APPELLANTS' STATE LAW CLAIMS LACK MERIT ....................35

A. The District Court Properly Granted Summary Judgment In Favor Of Appellees On Appellants' Assault Claim ....................35

B. Appellants Have Waived Their Trespass Claim By Failing To Address The Issue on Appeal ....................36

C. The District Court Properly Granted Summary Judgment In Favor of Appellees On Appellants' False Imprisonment Claim ....................36

D. The District Court Properly Granted Summary Judgment in Appellees' Favor On Appellants' Invasion of Privacy/ Intrusion Claims ....................38

E. The District Court Properly Granted Summary Judgment In Appellees' Favor on Appellants' Intentional Infliction Of Emotional Distress Claim ....................39

F. The District Court Properly Granted Summary Judgment In Appellees' Favor on Appellants' Negligence And Negligent Infliction Of Emotional Distress Claims ....................40

**CONCLUSION....................42**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6 ....................43**

**Form 8. Certificate of Compliance for Briefs....................44**

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................................33

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..........................................14

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ............................................17

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ..............................................17

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ..............................................33

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)..........................................................32

*Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989).................................28

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018) ..............................................................33

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..........................................................29

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)..................................... *passim*

*Parratt v. Taylor*, 451 U.S. 527 (1981) ..................................................................28

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................................32

*Santosky v. Kramer*, 455 U.S. 745 (1982) ..............................................................28

*White v. Pauly,* 137 S.Ct. 548 (2017) ....................................................................33

*Wilkinson v. Austin*, 125 S.Ct. 2384 (2005)...........................................................28

## UNITED STATES COURT OF APPEALS

*American Federation of Musicians of United States & Canada v. Paramount Pictures Corp*., 903 F.3d 968 (9th Cir. 2018)......................................................13

*Bingham v. City of Manhattan Beach*, 329 F.3d 723 (9th Cir. 2003) .....................13

*Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006).......................................... *passim*

*Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ..........................32

*Cmty. Commerce Bank v. O'Brien,* 312 F.3d 1135 (9th Cir. 2002)........................37

*Cmty. House, Inc. v. City of Boise*, 623 F.3d 945 (9th Cir. 2010)..........................33

*Collins v. City of San Diego*, 841 F.2d 337 (9th Cir. 1988) ............................21, 36

*Doe v. Lebbos,* 348 F.3d 820 (9th Cir. 2003) .......................................................34

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011).................................18

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) .............................33

*Duranceau v. Wallace,* 743 F.2d 709 (9th Cir.1984) ............................................31

*Galen v. County of Los Angeles,* 477 F.3d 652 (9th Cir. 2007) .............................19

*Gnatt v. City of Los Angeles*, 717 F.3d 702 (9th Cir. 2013).................................26

*Hunter v. County of Sacramento*, 652 F.3d 1225 (9th Cir. 2011) ..........................18

*Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) ...................................................37

*Jacobson v. AEG Capital Corp.*, 50 F.3d 1493 (9th Cir. 1995) .............................14

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018).....................................................20

*Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) ...............................41

*Lassiter v. City of Bremerton,* 556 F.3d 1049 (9th Cir. 2009)................................34

*Lockett v. City of Los Angeles*, 977 F.3d 737 (9th Cir. 2020) ..........................14, 17

*Mabe v. San Bernardino Cnty.,* 237 F.3d 1101 (9th Cir. 2001) .......................22, 34

*Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365 (9th Cir. 1998) ...........26

*Oyenik v. Corizon Health Inc.*, 696 F. App'x 792 (9th Cir. 2017)..........................18

*Padgett v. Wright*, 587 F.3d 983 (9th Cir. 2009)....................................................27

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ...................................................25

*Rattlesnake Coal. v. U.S. EPA,* 509 F.3d 1095 (9th Cir. 2007)..............................37

*Rodriguez v. Cnty of Los Angeles*, 891 F.3d 776 (9th Cir. 2018)............................32

*Sekiya v. Gates,* 508 F.3d 1198 (9th Cir. 2007)............................................37, 39, 41

*Sorrels v. McKee*, 290 F.3d 965 (9th Cir. 2002)......................................................33

*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004).........................22

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996)............................................14, 17, 18

*Tri-Valley Cares v. United States Dept. of Energy*, 671 F.3d 1113 (9th Cir. 2012) ....................................................................................................... 21, 36

*Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913 (9th Cir. 2002) ......14

*Wall v. County of Orange*, 364 F.3d 1107 (9th Cir. 2004).....................................39

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) .......................................... *passim*

*Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989 (9th Cir. 2006)............27

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)................................................22

*Wise v. Bravo*, 666 F.2d 1328 (10th Cir. 1981).......................................................24

*Zakrzewski v. Fox*, 87 F.3d 1011 (8th Cir. 1996) .......................................23, 26, 29

**SUPREME COURT OF CALIFORNIA**

*Conroy v. Regents of Univ. of Cal.*, 45 Cal.4th 1244 (2009)...................................41

*Hughes v. Pair*, 46 Cal.4th 1035 (2009)..................................................................40

*Taus v. Loftus*, 40 Cal.4th 683 (2007)......................................................................38

**CALIFORNIA COURT OF APPEAL**

*Bocanegra v. Jakubowski,* 241 Cal.App.4th 848 (2015).........................................37

*Collins v. Cnty of Los Angeles*, 241 Cal.App.2d 451 (1966)..................................37

*Edson v. City of Anaheim*, 63 Cal.App.4th 1269 (1998) .........................................36

*McMahon v. Craig*, 176 Cal.App.4th 1502 (2009)..................................................40

*Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463 (1986)........................38

*Ross v. Creel Printing & Publishing Co., Inc.*, 100 Cal.App.4th 736 (2002).........40

*Sanchez-Scott v. Alza Pharmaceuticals*, 86 Cal.App.4th 365 (2001) .....................38

## FEDERAL STATUTES

42 U.S.C. § 1983 .......................................................................................13

Federal Rule of Appellate Procedure 28 .......................................................37, 38, 39

Federal Rule of Civil Procedure 12 ...................................................................14

Federal Rule of Civil Procedure 56 ...................................................................14

## STATE STATUTES

*California Civil Code* § 51.7 ............................................................................13

*California Penal Code* § 279.6(a)(3) ..........................................................23, 41

*California Penal Code* § 298.5 ...................................................................23, 41

## STATEMENT OF ISSUES

Appellees City of Long Beach ("City") and Gabriela Rodriguez-Lopez ("Officer Rodriguez") address the following issues on appeal:

1. Whether Appellants have has waived the right to challenge the district court's dismissal of Appellant P.C.'s Fourth Amendment claim by failing to address any Fourth Amendment issues in their opening brief.

2. Whether the district court properly granted summary judgment on Appellants' *Monell* claim when Appellants fail to produce any evidence that the City has a custom, policy, or practice of unconstitutionally removing children from one parent when disputed claims to custody exist.

3. Whether the district court properly concluded that Mr. Grant suffered no Substantive Due Process violation under the Fourteenth Amendment when Officer Rodriguez assisted City police officers in having P.C. returned to her custodial parent upon the expiration of Mr. Grant's visitation period.

4. Whether the district court properly concluded that Mr. Grant suffered no Procedural Due Process violation under the Fourteenth Amendment when Mr. Grant's agreed-upon visitation period with P.C. was terminated without a pre-deprivation hearing.

5. Whether Officer Rodriguez is entitled to qualified immunity on Appellants' 42 U.S.C. § 1983 claims given that Appellants have failed to show that Officer Rodriguez violated any clearly established law when she assisted in facilitating the exchange of P.C. from her non-custodial parent to her custodial parent.

6. Whether the district court properly granted summary judgment on Appellants' assault claim when Officer Rodriguez never physically touched or threatened to harm Appellants in any manner.

7. Whether the district court properly granted summary judgment on Appellants' false imprisonment claim when there is no evidence that Officer Rodriguez restrained Appellants' freedom of movement.

8. Whether the district court properly granted summary judgment on Appellants' invasion of privacy claim when Officer Rodriguez was given permission to enter the apartment where Mr. Grant and P.C. were residing.

9. Whether the district court properly granted summary judgment on Appellants' Intentional Infliction of Emotional Distress claim when Officer Rodriguez's only actions were standing inside Mr. Grant's fiancé's apartment and briefly discussing the custody issues with Mr. Grant and his fiancé.

10. Whether the district court properly granted summary judgment on Appellants' Negligence claims when Officer Rodriguez was permitted by law to take a child into custody when there are conflicting claims to custody.

11. Whether Appellants have waived the right to challenge the district court's dismissal of their Trespass claim when Appellants fail to address the issue in their opening brief.

## STATEMENT OF THE CASE

### I. THE RELEVANT UNCONTROVERTED FACTS

Appellant Phairin Cephus ("P.C."), born on March 3, 2013, is the 10-year old daughter of Appellant Larry Grant ("Mr. Grant") and Michellei Cephus ("Ms. Cephus"). DSUF 1—2. SER-41, 110[1]. Mr. Grant and Ms. Cephus have never

[1] As Defendants' Statement of Uncontroverted Facts ("DSUF") contains 82 uncontroverted facts, many of which are cross-referenced to multiple depositions and other documentary evidence (*see* SER-258—272), what follows is necessarily a summary of the most pertinent facts and citations to the supporting evidence. For the Court's reference the following citations also include the most relevant DSUF numbers as reference is made to such in the district court's order granting summary judgment (1-ER-2).

married nor lived together. DUSF 10. SER-41—42, 110. P.C has never lived with Mr. Grant and has resided exclusively with her mother in the state of Georgia since 2014. DSUF 2—4, 11. SER-42—43, 50, 52, 54—56, 113—114, 119, 167—168, 171—174, 188. During P.C.'s lifetime, Ms. Cephus has been the sole parent responsible for making decisions concerning her daughter's education and medical care. DUSF 5. SER-41—42, 121, 171—174, 182. While Mr. Grant claims to have periodically made financial contributions for P.C. over the years, Ms. Cephus has been financially responsible for P.C.'s upbringing in every other way. DSUF 6. SER-41—43, 116—117. Over nearly the past decade, Mr. Grant has visited with P.C. on less than 10 occasions, all of which have occurred with Ms. Cephus' permission and coordination. DSUF 7—8. SER-41—43, 112, 118, 169, 190. Prior to the events of this case, Mr. Grant had never attempted to obtain custody of, or visitation rights to see, P.C. DUSF 9. SER-111—112, 116, 173—175. At the time of the events of this case, there had been no custody or visitation orders ever issued regarding P.C. DSUF 12. SER-41—43, 111—112, 116, 173—175.

In late August 2020, Ms. Cephus asked Mr. Grant if P.C. could stay with him for a couple of weeks while Ms. Cephus' home underwent renovations. DSUF 14. SER-43, 124—125, 153—154, 189—190, 208. According to Mr. Grant, he was asked to watch P.C. because Ms. Cephus was experiencing relationship issues and home plumbing issues. DSUF 15. SER-122—123. Nevertheless, Mr. Grant understood that P.C. would be returned to Ms. Cephus once her "issues" were resolved. DSUF 16. SER-127—128.

On August 31, 2020, Mr. Grant purchased a roundtrip flight from Los Angeles to Atlanta, Georgia. DSUF 17. SER-129—130, 156, 254. On the evening of September 2nd, Mr. Grant met Ms. Cephus and P.C. at an Atlanta airport before returning to Los Angeles with P.C. DSUF 18—19. SER-43, 129, 132—133. For the next sixteen days, P.C. remained with Mr. Grant and Alajne Brown ("Ms. Brown"),

Mr. Grant's fiancé, at Ms. Brown's apartment. DSUF 20. SER-43—44, 109, 134.

During P.C.'s stay, Mr. Grant "spanked P.C. on the buttocks for disrespectful behavior." DSUF 22. 3-ER-65, SER-138—140. At some time later, Ms. Cephus learned from P.C. that she had been hit, mistreated, and neglected by Mr. Grant. DSUF 23. SER-43—44, 138—140, 192—193.

On September 19, 2020, Ms. Cephus spoke to Mr. Grant and informed him that she was coming to California to retrieve P.C. DSUF 24. SER-136—137. Ms. Cephus subsequently sent a text message to Mr. Grant asking why he had hit P.C. and inquiring into his and P.C.'s whereabouts. DSUF 25. SER-44, 138—139, 159—161, 193. When her inquiries were ignored, inquiries, Ms. Cephus called 911 and requested a welfare check on P.C. DSUF 26. SER-44, 92, 138—139, 142—143, 159—161, 193, 217—218. Ms. Cephus then boarded a flight from Atlanta to Los Angeles to retrieve her daughter. DSUF 28. SER-44, 92, 193—194.

On this same day, around 4:00 p.m., several nonparty Long Beach Police Department ("LBPD") officers stopped Mr. Grant's vehicle to conduct a welfare check on P.C. DSUF 29. SER-92, 141—143. After the welfare check, the LBPD officers let Grant and P.C. go without incident. DSUF 30—34. SER-44, 92, 141—143, 144—145, 181.

Shortly after 10:00 p.m., upon arriving in Long Beach, Ms. Cephus contacted LBPD to request assistance in having P.C. returned to her custody. DSUF 35. SER-44—45, 92—93. LBPD nonparty Sergeant Robert Owens ("Sgt. Owens"), nonparty Officer Douglas Hara, and Appellee Officer Gabriela Rodriguez-Lopez ("Officer Rodriguez") (collectively, "the Officers") responded to the call. DSUF 13, 36. 1-ER-2, SER-92—93.

At Ms. Brown's apartment complex, the Officers spoke with Ms. Cephus, who explained that P.C. lives with her in Georgia and that she allowed Mr. Grant to watch P.C. for a couple weeks. DUSF 37. SER-44—45, 93. Ms. Cephus expressed worry

because Mr. Grant stated earlier that he intended to keep P.C. longer than the agreed-upon visitation time and was now ignoring her calls. DSUF 38. SER-44—45, 93. Ms. Cephus showed the Officers P.C.'s vaccination information, Georgia school records, and birth certificate, which only she had signed. DSUF 39. SER-44—45, 48, 93, 115. Ms. Cephus requested the Officers' assistance in having P.C. returned to her custody. DSUF 40. SER-44—45, 93.

After speaking with Ms. Cephus, the Officers approached Ms. Brown's apartment and knocked on the door. DSUF 41. SER-45, 93. Ms. Brown answered the door and, after Sgt. Owens explained that the purpose of the visit was regarding P.C., welcomed the Officers inside. DSUF 42—43. SER-93, 146—149.

Once inside, Sgt. Owens explained that they were present because Ms. Cephus had arrived in California to retrieve P.C. DSUF 44. SER-93—94. Mr. Grant protested and insisted that P.C. remain in his custody. DSUF 45. SER-93—94. Sgt. Owens advised Mr. Grant that, according to Ms. Cephus, it was agreed that Mr. Grant would watch P.C. for two weeks. DSUF 46. SER-93—94. Sgt. Owens asked Mr. Grant to show him any document that could verify he was P.C.'s father (*e.g.*, a paternity test, court order, or other document establishing parentage), but Mr. Grant had a custody-related application that had not yet been filed or served. DSUF 47—48. SER-45—46, 58—74, 76—86, 93—94, 150. After some discussion, the Officers escorted P.C. to Ms. Cephus. DSUF 49—51. SER-94—95. During this encounter, the Officers did not physically touch or threaten to cause any physical harm to Mr. Grant or P.C. DSUF 52. SER-94—95, 151—151, 178—179.

On September 24, 2020, Mr. Grant filed a Request for Temporary Emergency Child Custody Order. DSUF 54. SER-45—46, 76—88. On June 13, 2022, the Family Law Court dismissed Mr. Grant's custody case for lack of jurisdiction. DSUF 55. SER-45—46, 76—88.

## II. RELEVANT PROCEDURAL HISTORY

On August 17, 2021, Appellants filed a complaint against the City of Long Beach and Officer Rodriguez. 1-ER-3. On October 25, 2021, Mr. Grant was appointed guardian ad litem for P.C. in this case. 1-ER-3. On December 10, 2021, Appellants filed a First Amended Complaint ("FAC"). 1-ER-3—4. The FAC raises the following causes of action against Appellants: (1) 42 U.S.C. § 1983 claim for First, Fourth, and Fourteenth Amendment violations; (2) Assault; (3) Trespass; (4) False Imprisonment; (5) Invasion of Privacy/Intrusion into Private Affairs; (6) Intentional Infliction of Emotional Distress; (7) Negligence; and (8) Negligent Infliction of Emotional Distress. 1-ER-4.

On October 24, 2022, Appellees moved for summary judgment. 1-ER-4. On November 10, 2022, Appellants opposed. 1-ER-4. On November 17, 2022, Appellees replied. 1-ER-4.

On November 28, 2022, the district court issued an order granting summary judgment in favor of the City and Officer Rodriguez. 1-ER-2—22. The district court entered judgment in Appellees' favor and this instant appeal followed. 1-ER-22.

## STANDARD OF REVIEW

An order granting or denying summary judgment, including on qualified immunity grounds, is reviewed *de novo*. *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 728 (9th Cir. 2003). The appellate court may affirm summary judgment "on any ground supported by the record, regardless of whether the district court relied upon, rejected, or even considered that ground." *American Federation of Musicians of United States & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 981 (9th Cir. 2018) (internal quotes omitted).

On appeal, the Court applies the same legal standard as the district court and must determine whether, viewing the evidence in the light most favorable to the

nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 916 (9th Cir. 2002). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252

In their opening brief, Appellants acknowledge the correct standard of review, but appear to misconstrue the legal basis for the district court's dismissal of their claims. *See* AOB, 29—30. The district court did not, as Appellants imply, dismiss their claims on the pleadings under Federal Rule of Civil Procedure 12(b)(6) or 12(c), but rather under Rule 56, which governs summary judgment. AOB, 29; 1-ER-2—22. As such, while this Court reviews both the grant of summary judgment and the dismissal for failure to state a claim *de novo*, matters outside the pleadings are considered under the former but not the latter. *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995).

## SUMMARY OF ARGUMENT

First, the district court properly granted summary judgment in the City's favor on Appellants' *Monell* claim because Appellants are unable to meet the threshold requirement of showing a violation of any constitutional right. *Lockett v. City of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). Further, both at summary judgment and on appeal, Appellants present no evidence tending to demonstrate that their claimed constitutional injuries were the result of any widespread City custom, policy or practice. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Second, the district court properly granted summary judgment Officer Rodriguez' favor on Mr. Grant's Fourteenth Amendment substantive due process

claim. Appellants' main contention on appeal is that P.C.'s removal from Mr. Grant violated substantive due process because P.C. was not found to be in any imminent danger. AOB, 35—37. Appellants submit that, due to the absence of a "sufficient justification" for removing P.C. from Mr. Grant, Officer Rodriguez's conduct in assisting said removal was "conscience shocking." AOB, 38. Appellants' substantive due process arguments, however, erroneously assume that the standard for analyzing Section 1983 claims for interference with the right to familial association is the same in every context. It is well established that this Court distinguishes cases where the state terminates parental rights due to allegations of child abuse from cases where a state actor intervenes in a child custody dispute. *Brittain v. Hansen*, 451 F.3d 982, 989—90 (9th Cir. 2006). As this case involves officers' intervention in a custody dispute between parents rather than a government actor's seizure of P.C. from her parents, Mr. Grant must show that Officer Rodriguez deprived him of his liberty in a way that shocked the conscience. *Id.* at 991. Mr. Grant is unable to make this showing.

Third, the district court properly granted summary judgment in favor of Officer Rodriguez on Appellants' Fourteenth Amendment procedural due process claim. In their opening brief, Appellants cite *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) for the proposition that a pre-deprivation hearing was required before the Officers could remove P.C. from Mr. Grant's custody. AOB, 41—42. Appellants again miss the point. Similar to the substantive due process analysis, the procedural safeguards required for resolving custody disputes are typically less than those required in the child abuse precedents. *Britain*, 451 F.3d at 990. Mr. Grant, as the non-custodial parent, was not constitutionally entitled to a pre-deprivation hearing before he was deprived of his vitiation time with P.C. As such, Appellants ae unable to show a violation of their procedural due process rights under the Fourteenth Amendment.

Fourth, even assuming Appellants can show a constitutional deprivation of a protected liberty interest, Officer Rodriguez is nevertheless entitled to qualified immunity because the law was not clearly established such that an officer in her position would have understood her actions to be unlawful. Appellants' attempts to overcome qualified immunity are futile as the facts and circumstances known to Officer Rodriguez at the time of the incident establish that there was a lawful basis to return P.C. to her custodial parent and Appellants fail to demonstrate that P.C.'s removal and return to her mother violated any clearly established law.

Lastly, the district court properly granted summary judgment in Appellees' favor on Appellants' remaining state law claims. Because the district court properly granted summary judgment in favor of Appellees' *Monell,* Fourth Amendment, and Fourteenth Amendment claims, Appellants' derivative claims for invasion of privacy, intentional infliction of emotional distress, and negligence were properly adjudicated as well. Appellants' assault claim should be affirmed because there is not a scintilla of evidence that Officer Rodriguez utilized any force—reasonable or otherwise—on either P.C. or Mr. Grant.

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' MONELL CLAIM

Appellants maintain their Section 1983 municipal liability claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) was decided in err by the district court. AOB, 30. They contend that the City bears *Monell* liability because nonparty Sgt. Owens failed "to supervise employees pursuant to the constitution" and, in so doing, "demonstrated a persistent and widespread custom or practice of constitutional violations against Black people." AOB, 31. This hybrid *Monell*-supervisory theory not only fails to state a cognizable municipal

liability claim but is also devoid of *any* evidentiary support. For these reasons, and for the reasons explicated below, none of Appellants' threadbare arguments warrant deviating from the district court's ruling on their *Monell* claim.

First, Appellants' *Monell* argument does not pass muster because there is no evidence they suffered a constitutional injury. *See infra*. A *Monell* claim is contingent on a violation of a constitutional right. *Lockett*, 977 F.3d at 741. In other words, a *Monell* claim is not tenable without first establishing an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). *Monell* claims cannot predicate municipal liability for constitutional violations of its officers under a theory of *respondeat superior. Monell*, 436 U.S. at 691. Thus, because Appellants are unable to meet the threshold requirement of showing a violation of any constitutional right, there can no *Monell* liability on the City. *Heller*, 475 U.S. at 799 .

Second, Appellants' *Monell* argument on appeal is futile because Appellants do not cite to *any* evidence in the record which would tend to show any incident or incidents where LBPD officers unconstitutionally (or otherwise) removed a child from one parent and returned the child to the other parent. *Trevino*, 99 F.3d at 918 (Liability for improper custom may not be predicated on sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy). *Monell* liability may attach when an employee committed a constitutional violation pursuant to a widespread practice or custom. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Under this *Monel* theory of liability, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Dougherty v. City of Covina*,

654 F.3d 892, 900 (9th Cir. 2011). A plaintiff pursuing custom or policy *Monell* liability must establish the existence of a widespread practice or policy as a matter of fact. *Trevino*, 99 F.3d at 920. A widespread "custom or practice" must be so "persistent" that is constitutes a "permanent and well settled city policy" and "constitutes the standard operating procedure of the local government entity." *Monell*, 436 U.S. at 691. The Ninth Circuit has recognized that "a custom or practice can be 'inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233-35 (9th Cir. 2011) (citations omitted); *see also Oyenik v. Corizon Health Inc*., 696 F. App'x 792, 794 (9th Cir. 2017) (noting that "one or two incidents are insufficient to establish a custom or policy").

Here, Appellants use circular reasoning by arguing that nonparty Sgt. Owens' failure to supervise Officer Rodriguez during one occasion is evidence of a widespread custom or policy of "constitutional violations against Black people" existed. AOB, 31. This is proof by assertion. The record is devoid of any prior unconstitutional conduct "against Black people" that would have served to put the City on notice that a failure to supervise may lead to constitutional violations similar to the ones Appellants claim to have endured. *Trevino*, 99 F.3d at 920. Appellants cannot point to one shred of evidence showing that the alleged custom of inaction in supervision was routinely, or even occasionally, followed or implemented in circumstances similar to this case, or otherwise. These vague and conclusory allegations are nothing more than a [partial] formulaic recitation of a *Monell* cause of action. Furthermore, for the first time on appeal, Appellants appear to claim that their equal protection rights were violated as a result of an

unlawful City policy or practice.[2] AOB, 31. However, to impose liability under *Monell*, a plaintiff must show "a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." !*Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (citing *Monell,* 436 U.S. at 694–95). Thus, because Appellants have not pled any violations of their equal protection rights, they are unable to establish that any unlawful City custom or policy was the moving force behind the constitutional violations they claim to have suffered. *Monell*, 436 U.S. at 694–95 (Claims against a municipality cannot be based on claims of *respondeat superior* but rather must be based on any custom, practice or policy which is the motivating factor in the Constitutional violations claimed). Appellants have also not set forth any evidence establishing that the City was deliberately indifferent to the need for more or better supervision. Thus, on these bases, the district court's grant of summary judgment on Appellants' *Monell* claim should be upheld.

## II. THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

Appellants offer two meager challenges to the district court's grant of summary judgment on Mr. Grant's Fourteenth Amendment substantive due process claim. Appellants first submit that because P.C. was found to be safe and because neither parent had legal custody documents, Appellees' "removal" of P.C. was not justified and ran afoul of the Fourteenth Amendment. AOB, 38. However,

---

[2] It is worth noting that, despite the several race-based allegations made in the opening brief, Appellants have never pled an equal protection claim against Appellants. 1-ER-2—22. It is also worth nothing that Ms. Cephus is also African American. SER-50.

just as they did at summary judgment, Appellants refuse to acknowledge that Mr. Grant's Fourteenth Amendment claims are not analyzed under child abuse precedents, which generally prohibit a government actor's removal of a child absent a court order or exigent circumstances. *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2006). Based on their refusal to apply the correct legal framework to child removals during custody disputes, Appellants have failed to set forth any evidence showing anything other than Mr. Grant being deprived of an unspecified amount of informally agreed-upon visitation time with P.C., which does not rise to the level of a due process violation. Second, Appellants contend that Officer Rodriguez's conduct was conscience-shocking because, despite P.C. being safe in Mr. Grant's custody, Sgt. Owens (a nonparty) utilized "threats and intimidation" to remove P.C. from his care. AOB, 40. This argument lacks merit because neither Sgt. Owens nor Officer Hara are parties to this action and any arguments regarding these nonparties are entirely irrelevant. Further, even if Appellants can show an actionable due process interference with Mr. Grant's liberty interest (which they cannot), Appellants are still unable to show that Officer Rodriguez's conduct was conscience-shocking.

### A. P.C. Cannot Maintain A Fourteenth Amendment Due Process Claim

At the outset, it is worth nothing that P.C.'s contention of having suffered a Fourteenth Amendment violation lacks any basis in law because claims by children for unreasonable seizure are analyzed under the Fourth Amendment. *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) ("[We] evaluate the claims of children who are taken into state custody under the Fourth Amendment right to be free from unreasonable seizures rather than the Fourteenth Amendment right to familial association."); *see also Wallis v. Spencer*, 202 F.3d 1126, 1137 n. 8 (9th Cir. 2000) (noting that because only the children were subjected to a seizure, their claims

should properly be assessed under the Fourth Amendment). Thus, because P.C. cannot maintain a Fourteenth Amendment claim based on her removal from Mr. Grant's custody, the district court properly concluded that P.C. suffered no substantive due process violation.

Additionally, in their opening brief, Appellants do not appear to challenge the district court's dismissal of P.C.'s Fourth Amendment claim (1-ER-9—14). *See generally* AOB. "It is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned." *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988). Thus, P.C.'s Fourth Amendment claim has been abandoned and/or waived on appeal by Appellants' failure to raise the issue in their opening brief. *Tri-Valley Cares v. United States Dept. of Energy*, 671 F.3d 1113, 1129-1130 (9th Cir. 2012) ("Claims not made in an opening brief in a sufficient manner to put the opposing party on notice are deemed waived.") On this basis alone, as well as for the reasons discussed below, the district court's dismissal of P.C.'s Fourth Amendment claim should be affirmed on appeal.

### B. Mr. Grant's Substantive Due Process Claim Lacks Merit Because He Cannot Show A Deprivation Of A Liberty Interest

Appellants contend that that this Court should "restore Appellants' substantive due process claim" because Appellees lacked "sufficient justification" to remove P.C. from Mr. Grant's home. AOB 35, 38. Appellants, however, offer no reasoned analysis or evidentiary basis to override the district court's ruling. Instead, Appellants summarize a litany of unrelated Fourteenth Amendment jurisprudence and then offer a conclusory assertion that Mr. Grant was deprived of a protected liberty interest. For the reasons discussed below, the district court properly concluded that no substantive due process violation occurred.

To prevail on a substantive due process claim, the plaintiff must show a

government deprivation of life, liberty, or property. *Squaw Valley Dev. Co. v. Goldberg,* 375 F.3d 936, 948 (9th Cir. 2004). It is well-established that parents have a liberty interest in the companionship and society of their children. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). This Fourteenth Amendment liberty interest guarantees that parents and children will not be separated by the government without due process of law. *Wallis*, 202 F.3d at 1136.

In suspected child abuse cases, the Fourteenth Amendment generally prohibits a child's removal from her parent absent a court order or reasonable cause to believe that the child is in imminent danger. *Mabe v. San Bernardino Cnty., Dept. of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001). On the other hand, in circumstances where a government official intervenes in a child custody dispute between parents, the aforementioned child abuse precedents do not apply. *Brittain*, 451 F.3d at 990. In drawing the distinction between child abuse cases and custody dispute cases, this Court explained that while non-custodial parents with court-ordered visitation possess a liberty interest, that liberty interest "is unambiguously lesser in magnitude than that of a parent with full legal custody." *Id.* at 992, 996.

In the case at bar, the negligible interference on Mr. Grant's liberty interest (if any), like the interferences in the cases below (*infra*), is woefully insufficient to give rise to a substantive due process violation. It is undisputed that Mr. Grant did not possess legal custody of P.C. during or prior to the events in question. SER-41—43, 111—112, 116, 173—175. In fact, Mr. Grant does not otherwise dispute he lacked custody or court-ordered visitation rights during or prior to these events. *See generally*, AOB. Likewise, there is no genuine dispute as to Mr. Cephus' legal custody of P.C. during or prior to the night in question. SER-44—45, 48, 93, 115. It is also undisputed that Mr. Grant's visitation with P.C. would be limited to a couple of weeks. DSUF 14. SER-43, 124—125, 153—154, 189—190, 208. In fact, Mr.

Grant understood that his visitation would end once Ms. Cephus' issues were resolved. DSUF 16. SER-127—128. When Ms. Cephus arrived in Long Beach to retrieve P.C., Mr. Grant's visitation had ended as he and P.C. had been together for 16 days. DSUF 18—19. SER-43, 94—95, 129, 132—133. At that time, the agreement had been fulfilled and Mr. Grant was obligated to return P.C. to her mother. The following cases illustrate the divergence in Fourteenth Amendment jurisprudence involving child removals.

In *Brittain*, police officers were involved in a custody dispute and transferred a child from a parent with visitation rights to the parent who was the sole legal guardian. 451 F.3d at 996. In reviewing the Fourteenth Amendment claim, the *Brittain* Court upheld the finding of qualified immunity based on facts similar to this case. The court found that the officers in *Brittain* were likely acting under two relevant state laws —*California Penal Code* §§ 279.6(a)(3) and 278.5. *Id.* at 997. *California Penal Code* § 279.6(a)(3) authorized police officers to take a child into protective custody if "[t]here are conflicting custody orders or conflicting claims to custody and the parties cannot agree with which part should take custody of the child." Ultimately, the court in *Brittain* concluded that the police officer's interference with the non-custodial mother's exercise of her court-ordered visitation rights did not amount to a deprivation of mother's liberty interest in the visitation rights; and thus, did not violate her substantive due process rights. *Id.* at 993.

The facts and holding in *Zakrzewski v. Fox* also highlight this divergence in Fourteenth Amendment precedent and are also instructive here. 87 F.3d 1011 (8th Cir. 1996). In *Zakrzewski*, a divorce decree had granted visitation rights to plaintiff Thomas Zakrzewski with his son and sole legal custody to Zakrzewski's ex-wife. *Id.* at 1012. After Zakrzewski took physical custody of his son for the weekend, a dispute arose as to who had custody the next week. *Id.* at 1013. When the dispute

could not be resolved, the ex-wife called the sheriff's office, explained that Zakrzewski was violating the terms of the divorce decree, and requested assistance in having her son returned to her custody. *Ibid.* When the sheriff's office called Zakrzewski, he protested the sheriff's demand to return his son to the ex-wife. *Ibid.* Shortly thereafter, Zakrzewski was pulled over by two sheriff deputies who told him that he would be arrested if he refused to turn over his son. *Ibid.* Zakrzewski then agreed to deliver his son to his ex-wife. *Ibid.* The Eighth Circuit held that the infringement on Zakrzewski's liberty interest was insufficient to give rise to a substantive due process claim. *Id.* at 1014—15.

In *Wise v. Bravo*, plaintiff Robert Wise had lost legal custody of his daughter in a divorce decree but obtained visitation rights. 666 F.2d 1328, 1330 (10th Cir. 1981). On one occasion, Wise took his daughter for an extended visit pursuant to an agreement with his ex-wife. *Ibid.* About one week into the visit, the ex-wife phoned Wise and told him that she wanted their daughter back that night. *Ibid.* After Wise refused to return their daughter, both he and his ex-wife contacted the police. *Ibid.* Later that day, six police officers arrived at Wise's apartment, entered the apartment, and ordered Wise to turn over his daughter: Wise eventually complied. *Ibid.* Thereafter, Wise filed suit alleging that the police interfered with his child visitation rights in violation of the Fourteenth Amendment. *Id.* at 1333. In rejecting Wise's argument, the Tenth Circuit held that "[a]ny deprivation of Wise's visitation rights was so insubstantial in duration and effect [that it failed] to rise to a federal constitutional level." *Ibid.* The court noted that Section 1983 "should not be viewed as a vehicle to resolve a dispute involving visitation rights-privileges" as "[t]hat is a subject uniquely reserved to the state court system." *Ibid.*

Here, similar to *Brittain*, Officer Rodriguez assisted in a situation involving conflicting claims to P.C.'s custody. While no court order existed at the time, the LBPD officers reasonably intervened and acted on behalf of the parent (Ms.

Cephus) who was able to demonstrate parentage and had established primary physical custody. DSUF 39. SER-44—45, 48, 93, 115 As discussed above, it is undisputed that Ms. Cephus is P.C.'s sole custodial parent. Mr. Grant, on the other hand, was unable to produce any documentation establishing that he was even P.C.'s parent, let alone that he had any custody or visitation rights. DSUF 47—48. SER-45—46, 58—74, 76—86, 93—94, 150. Additionally, similar to *Brittain, Zakrzewski*, and *Wise,* the transfer of P.C. to Ms. Cephus was accomplished through the presence of police officers, and the transfer of P.C. led to no loss of Mr. Grant's visitation. SER-44—45, 92—93. Also, as in the cases above, the LBPD police officers facilitated the transfer of P.C. over Mr. Grant's protests that he was entitled to custody. DSUF 45. SER-93—94. As such, based on established precedent, Mr. Grant does not have the same liberty interest as a custodial parent. Mr. Grant has at most, if not less than, the same liberty interest as a non-custodial parent, as was the case in *Brittain*, *Zakrzewski*, and *Wise*. It follows that Mr. Grant's act of spending time with P.C. pursuant to an informal agreement, and absent a court order, does not amount to a "fundamental" liberty interest. Thus, the return of P.C. to her mother at the conclusion of Mr. Grant's limited visitation period does not rise to the level of a federal constitutional violation. *See Brittain*, 451 F.3d at 994–97 (noting no deprivation "[g]iven the relatively short duration of the interference and limited nature of the liberty interest compared to custody…").

### C. Officer Rodriguez's Actions Did Not Shock The Conscience As A Matter Of Law

Appellants contend that Officer Rodriguez's conduct shocked the conscience when she "acted outside of [her] jurisdictional duties" by removing P.C. from Mr. Grant's custody using "intimidation and coercion". AOB, 38 & 40. A police officer's interference with a liberty interest may implicate the Fourteenth Amendment but only if the interfering conduct "shocks the conscience." *Porter v. Osborn*, 546 F.3d

1131, 1137 (9th Cir. 2008). Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. *Ibid.* Deliberate indifference amounts to a conscious or reckless disregard of the consequences of one's acts or omissions; it entails something more than negligence. *Gnatt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013). In addressing "conscience shocking" conduct in the context of child removal surrounding custody disputes, Ninth Circuit aptly pointed out in *Brittain*:

> We do not require police officers to act as legal experts to avoid violating the Constitution; substantive due process secures individuals from 'arbitrary' government action that rises to the level of 'egregious conduct,' not from reasonable, though possibly erroneous, legal interpretation.

*Brittain*, 451 F.2d at 996.

Here, for the same reasons discussed the preceding section, Officer Rodriguez's actions were not "conscience shocking." *See Brittain*, 451 F.3d at 994—97. Further, even if Officer Rodriguez and the other officers on scene reached an erroneous legal conclusion regarding the return of P.C. to her mother, Officer Rodriguez's presence at the apartment on the night of the incident and her attempts to address a couple of questions were objectively reasonable as a matter of law. *See Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 371 n. 4 (9th Cir. 1998) (if an officer's actions "were objectively reasonable, it follows that his conduct did not offend the more stringent standard applicable to substantive due process claims"); *see also Zakrzewski*, 87 F.3d at 1014 (Holding that officers' actions, though based on an erroneous legal conclusion that Zakrzewski was not entitled to custody, were not conscience shocking). Also, while on scene, Officer Rodriguez contacted the Department of Children and Family Services to relay Mr. Grant's concerns regarding the custody dispute at issue. SER-93—94. This is not the type of conscience shocking conduct that is

indicative of a constitutional violation. As such, because Officer Rodriguez's actions were not conscience-shocking, there can be no substantive due process violation and the district court's grant of summary judgment on this claim should be affirmed.

### D. There Is No Merit To Appellants' Claims As To Nonparty Sgt. Owens

In an effort to raise a triable issue, Appellants contend that "Appellees and Sgt. Owens physically forced (threats and intimidation to gain control or prevent resistance), Mr. Grant in giving up all his rights, using intimidation and coercion, *inter alia.*" AOB, 40. This conclusory assertion is unsupported by the record. More importantly, Sgt. Owens is not even a party to this action. Appellants made absolutely no effort to add Sgt. Owens as a defendant in the lower court and their arguments as to him are therefore totally irrelevant as far as ruling on the motion and on appeal. A party may not oppose summary judgment based on a claim raised for the first time in opposition papers and not alleged in the pleadings. *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."). Appellants' arguments as to all nonparties, both in the district court and on appeal, are factually and procedurally irrelevant. *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (we do not consider arguments and allegations raised for the first time on appeal).

## III. THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM

Appellants claim their procedural due process rights were violated because Mr. Grant was deprived of a pre-deprivation hearing prior to P.C. being removed

from his custody. AOB, 41. Appellants cite *Wallis v. Spencer* in support of their contention that, absent a showing of imminent danger, children cannot be removed from their parent without notice and a pre-deprivation hearing. AOB, 41—42. Appellants' contention, however, is misplaced because it relies on the erroneous assumption that child abuse precedents dictate the constitutionally required procedures that apply in this case. *See Brittain*, 451 F.3d at 999. Appellants refuse to acknowledge that the procedural safeguards required for resolving custodial disputes are generally less than those required in the child abuse precedents. *Ibid.* When the correct precedential framework is applied, it is clear that, under the circumstances of this case, Appellants were not entitled to a pre-deprivation hearing before P.C. was returned to her mother.

The Fourteenth Amendment prohibits the government from depriving individuals of life, liberty or property without adequate procedural safeguards. *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 459 (1989). A "procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest; and (2) a denial of adequate procedural protections." *Ibid*. Government officials may interfere with a person's right to familial association "if they provide the parents with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). In general, a procedural due process claim lacks merit where there exists an adequate state court remedy. *Parratt v. Taylor*, 451 U.S. 527 (1981).

Procedural due process claims are resolved by balancing tests, where differing interests can give rise to different procedural requirements. *Brittain*, 451 F.3d at 1000; *see Wilkinson v. Austin*, 125 S.Ct. 2384, 2395 (2005) (holding that due process requirements are flexible and call for such procedural protections as a particular situation demands). Further, an interest may simply be too weak, under the balancing tests, to require any additional procedures. *See, e.g.*, *Zakrzewski*, 87

F.3d at 1014 (state post-deprivation remedies to enforce visitation orders were constitutionally sufficient). Similar to the substantive due process analysis, the procedural safeguards required for resolving custody disputes are typically less than those required in the child abuse cases. *Brittain*, 451 F.3d at 999.

In *Brittain*, this Court held that "no pre-deprivation hearing was required before the non-custodial parent] could be deprived of a week of visitation." *Id.* at 1002. The *Brittain* Court's holding stemmed from their analysis of the three-factor balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Brittain*, 451 F.3d at 1000. In *Mathews*, the Supreme Court balanced three interests in determining the amount of process due: (1) the private interest that will be affected by the government action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. *Id.*at 334—35.

Here, Appellants do not contend that their procedural due process rights were violated by any failure of post-deprivation proceedings. *See generally*, AOB. Instead, Appellants challenge the lack of a pre-deprivation hearing (citing *Wallis*) before Mr. Grant was deprived of his visitation time with P.C., if any. AOB, 41—42. A cursory examination of the court's holding in *Brittain* makes it abundantly clear that Mr. Grant was not constitutionally entitled to a pre-deprivation hearing. The only factual distinction from *Brittain* is that, unlike the parent in that case, Mr. Grant did not have any court-ordered visitation rights. SER-41—43, 111—112, 116, 173—175. Rather, Mr. Grant's visitation with P.C. was based on Ms. Cephus' permission. SER-43, 124—125, 127—128, 153—154, 189—190, 208. It follows that Mr. Grant's liberty interest is, at most, equivalent if not less than the non-custodial parent in *Brittain*. As such, because no pre-deprivation hearing was required before the non-custodial parent in *Brittain* could be deprived of his visitation, neither was Mr. Grant.

Similar to *Brittain*, the following application of the *Mathews* test to the facts of this case leads to only one conclusion: there was no violation of Appellants' procedural due process rights. Under the first *Mathews* prong, there are three private interests at stake here: (1) Mr. Grant's interest in enjoying visitation rights by Ms. Cephus without government interference; (2) Ms. Cephus' rights as the custodial parent; and (3) P.C.'s interest. In addressing this first prong, the Ninth Circuit in *Brittain* notes that "requiring a pre-deprivation hearing before any coerced transfer of a child…would essentially award the parent then holding the child with continued custody until the matter could be adjudicated." 451 F.3d at 1000—01. The "potential exposure to the custodial parent is therefore greater because that parent has more custodial time to lose." *Id.* at 1001.

Here, similar to the custodial parent in *Brittain*, Ms. Cephus' liberty interest, as the custodial parent, is "greater in both magnitude and duration" that Mr. Grant's. *Id.* at 1001. Appellants can offer no evidence to dispute the fact that Mr. Grant's visits with P.C. were arranged by Ms. Cephus and with Ms. Cephus' permission. SER-41—43, 112, 118, 169, 190. Ms. Cephus asked Mr. Grant to watch P.C. for two weeks while her home underwent renovations. SER-43, 124—125, 153—154, 189—190, 208. Mr. Grant was afforded approximately sixteen days with P.C. before LBPD officers facilitated her return to Ms. Cephus. SER-43—44, 109, 134. As such, at the time of the events at issue, Mr. Grant's liberty interest was negligible as the duration of the agreed upon visitation had already lapsed. Lastly, P.C.'s interest do not appear to affect the balance of her parents' interests because, as the *Brittain* Court points out, "[c]hildren…have an interest in seeing that the custody schedule…is followed." *Ibid.* "If children are being wrongfully held by a parent, they have a clear interest in being returned to the parent who is entitled to physical custody at the time without any additional time-consuming procedures." *Ibid.* Thus, P.C.'s interest does not appear to weigh in

favor or against a pre-deprivation hearing.

Under the second part of the *Mathews* test*,* additional proceedings would likely provide some value in decreasing the risk of erroneous deprivation. *Ibid.* However, "given the exceptionally compressed time schedule any pre-deprivation hearing would require in order to adjudicate the very short periods of time involved, this value is somewhat limited." *Ibid.* The *Birttain* Court points out that many "custodial disputes will be unambiguously wrongful withholdings of children, rather than interpretive disagreements over court orders. In such circumstances, the value of additional procedures and the risk of erroneous deprivation are quite minimal and the interest of the parent whose child is wrongfully withheld is exceptionally great." *Ibid.*

Under the third *Mathews*' prong*,* the City's interest in not requiring pre-deprivation hearings is undoubtedly substantial. As the Ninth Circuit notes, "[t]he administrative costs and burdens of a hearing on the merits of a custody dispute are substantially greater than the interest in a single week of visitation". *Ibid.*; *see also Duranceau v. Wallace,* 743 F.2d 709, 711–12 (9th Cir. 1984) (holding no pre-deprivation hearing was necessary before the state could enforce a disputed child support order). Moreover, the City has a strong interest in having its patrol officers responding to calls for service rather than attending time-consuming pre-deprivation hearings. This interest would be significantly diminished if a pre-deprivation hearing was required before any enforcement action could be taken during a child custody dispute. On the night in question, the Officers responded to mediate a custody dispute involving P.C. 1-ER-2; SER-44—45, 92—93. If this dispute mandated a hearing, the administrative burden to the City would be substantial.

Based on the analysis of the balancing test under *Mathews,* Mr. Grant was not entitled to a pre-deprivation hearing before P.C. could be returned to her

mother, nor was Officer Rodriguez required to facilitate such a hearing. For similar reasons, P.C. was also not deprived of any procedural due process rights. Thus, based on the foregoing, the district court's order granting summary judgment on Appellants' procedural due process claims should be affirmed.

## IV. THERE WAS NO VIOLATION OF ANY CLEARLY ESTABLISHED LAW

The doctrine of Qualified immunity protects officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, *v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity gives peace officers breathing room to make reasonable but mistaken judgments about open legal questions. *Rodriguez v. Cnty of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018). The immunity applies regardless of whether the officer's error is a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity doctrine requires a two-pronged analysis: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2) whether that right was clearly established at the time the defendant acted. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016). Here, because Appellants suffered no constitutional injury (*supra*), the district court correctly found that Officer Rodriguez was afforded qualified immunity under the first prong of the qualified immunity analysis. However, even assuming Appellants could somehow show a violation of their Fourteenth Amendment rights, Officer Rodriguez is nevertheless entitled to qualified immunity because Appellants have not shown, and cannot show, a violation of any clearly established right.

The second prong of the qualified immunity analysis asks whether the alleged constitutional right was "clearly established" at the time of the events

alleged. *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). Put simply, the inquiry is: Would it be clear to a reasonable officer that the defendant officer's conduct was unlawful in the situation he confronted? *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) "The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

A clearly established right is one that is "sufficiently clear that every reasonable official" – which excludes only the plainly incompetent and those know knowingly violate the law – "would have understood that what he is doing violates that right." *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018). To this end, the plaintiff must identify specific cases decided prior to the alleged constitutional violation at issue, that are factually similar to the particular circumstances in the subject case. *White v. Pauly,* 137 S.Ct. 548, 552 (2017). Existing precedent must have placed the statutory or constitutional question beyond debate that the officer's conduct under such circumstances violated the constitution. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (holding that to deny qualified immunity, the plaintiff must provide a controlling case or robust consensus of cases that defines the constitutional violation under similar circumstances). Courts are also cautioned to not define the clearly established right at a high level of generality that covers a wide range of conduct. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Here, Appellants contend that Officer Rodriguez violated clearly established law prohibiting a government actor's removal of a child absent exigent circumstances or consent. AOB, 43. Appellants reference four Ninth Circuit decisions in support of their contention that Officer Rodriguez's actions ran afoul of clearly established law. AOB, 43—45. For the reasons discussed below, Appellants' reliance on the cited decisions is misplaced as the facts and holdings

are undoubtedly distinguishable from the case at bar and, ultimately, the precedents fail to advance Appellants' qualified immunity arguments in any meaningful way.

In *Mabe v. San Bernardino County*, the Ninth Circuit reviewed, *inter alia*, a district court's grant of qualified immunity to a county social worker who had removed a child from her home after receiving reports that the child was being sexually abused by her stepfather. 237 F.3d 1101, 1102—1103 (9th Cir. 2001) . The court reversed the district court's dismissal on summary judgment on qualified immunity grounds, and held that material issues of fact existed regarding the existence of exigent circumstances supporting warrantless removal of the child, precluding. *Id*. at 1108–09.

In *Doe v. Lebbos*, the plaintiffs alleged that the social worker violated their constitutional rights by removing a four-year-old girl from her father's custody, inadequately investigating allegations of abuse and neglect, fabricating evidence in support of the dependency petitions, and referring the daughter for a sexual abuse examination without parental consent or a court order. 348 F.3d 820, 822—23 (9th Cir. 2003). The court concluded that the social worker had reasonable cause to believe that Lacey was in imminent danger and that the child's removal did not violate the plaintiff's constitutional rights. *Id.* at 827. This Court also granted the social worker qualified immunity in referring Lacey for a sexual abuse examination without the father's consent or a formal court order. *Id.* at 831.

In *Lassiter v. City of Bremerton*, this Court did not, as Appellants contend, address a situation where a police officer removed a child from her parent's custody without a warrant or exigent circumstances. 556 F.3d 1049 (9th Cir. 2009). In *Lassiter,* a married couple brought § 1983 action against city of Bremerton, its police chief, police officers, and others, alleging, *inter alia*, unlawful arrest, malicious prosecution, and failure to investigate. *Id.* at 1049—51. Following the

district court's grant of summary judgment in favor of defendants, plaintiffs appealed and this court affirmed. *Id.* at 1055.

In the case at bar, Appellants have not met their burden under the second prong of the qualified immunity analysis, nor can they. Both *Mabe* and *Lebbos* are factually distinct cases in which social workers or police officers acted on the basis of suspected sexual abuse. As the *Brittain* Court made clear, there "are vital distinctions between the child abuse precedents" and cases involving interference with a parent's visitation rights. *Brittain*, 451 F.3d at 989. Given this distinction, Appellants have not set forth any analogous case where government officials were found to have violated a plaintiff's Fourth and/or Fourteenth Amendment rights under factually similar circumstances. As such, Appellants are unable to overcome qualified immunity as they cannot identify a case where an officer acting under similar circumstances as Officer Rodriguez was held to have violated the Fourth and/or Fourteenth Amendments. Thus, in the absence of clearly established law, Officer Rodriguez is entitled to qualified immunity.

## V. APPELLANTS' STATE LAW CLAIMS LACK MERIT

### A. The District Court Properly Granted Summary Judgment In Favor Of Appellees On Appellants' Assault Claim

Appellants contend that Officer Rodriguez is liable for assault based on her "accompanying Owens in interrogating, intimidating, and tormenting Mr. Grant to release custody of his daughter to them, utilizing apprehensive conduct that made Mr. Grant belief [sic] that the LBPD's conduct would lead to imminent harmful or offensive conduct." AOB, 28. Aside from bare legal conclusions, Appellants point to no evidence on appeal that would justify reversal of the district court's grant of summary judgment on their assault claim. Appellants offer no evidentiary support, misstate case holdings, and misrepresent legal authority to support their arguments.

Even if Appellants have offered a reasoned argument on appeal, their assault

claim still lacks merit. Assault and battery claims brought under California law are analyzed under the same "reasonableness" standard used to evaluate Fourth Amendment excessive force claims. *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272—73 (1998). A police officer commits a battery or an assault when he or she uses unreasonable force. *Id.* at 1272.

During the subject incident, Officer Rodriguez did not apply any form of physical force to Appellants' bodies nor did Officer Rodriguez ever threaten Appellants with physical force. SER-94—95, 151—151, 178—179. The return of P.C. to her mother, without any physical contact or threat of force, fails to state a plausible assault claim. There is no evidence in the record that Appellants were subjected to any force, reasonable or otherwise. Consequently, the district court's grant of summary judgment on Appellants' assault claim must be affirmed.

### B. Appellants Have Waived Their Trespass Claim By Failing To Address The Issue on Appeal

In their opening brief, Appellants fail to raise any arguments contesting the dismissal of their trespass claim. "It is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned." *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988). Thus, Appellants' trespass claim has been abandoned and/or waived on appeal by Appellants' failure to raise the issue in their opening brief. *Tri-Valley Cares*, 671 F.3d at 1129-1130 ("Claims not made in an opening brief in a sufficient manner to put the opposing party on notice are deemed waived.").

### C. The District Court Properly Granted Summary Judgment In Favor of Appellees On Appellants' False Imprisonment Claim

Appellants contend on appeal that their "liberty was violated by sustained restriction of their freedom using duress, fraud, and deceit." AOB, 47. This

argument is devoid of both legal and evidentiary support. Appellants' arguments again misrepresent the legal citations upon which they rely. AOB, 47—48. *See Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) (involving a class action 42 U.S.C. § 1982 lawsuit by civilly committed persons confined at state hospital challenging conditions of their confinement); *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 1999) (plaintiffs' only state law claims consisted of assault, battery, and intentional infliction of emotional distress). Appellants' unsubstantiated and conclusory allegations are insufficient to warrant deviating from the district court's dismissal of their false imprisonment claim. *See* Fed. R. App. P. 28(a)(9)(A) ("The appellant's brief must contain…appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."); *Rattlesnake Coal. v. U.S. EPA,* 509 F.3d 1095, 1100 (9th Cir. 2007) ("Issues raised in an opening brief but not supported by argument are considered abandoned."); *Sekiya v. Gates,* 508 F.3d 1198, 1200 (9th Cir. 2007) (per curiam) (striking entire brief for material deficiencies including the failure to cite to legal authority or the record); *Cmty. Commerce Bank v. O'Brien (In Re O'Brien),* 312 F.3d 1135, 1137 (9th Cir. 2002) ("As with briefing inadequacies, the failure to present a sufficient record can itself serve as a basis for summary affirmance.").

The grant of summary judgment on Appellants' false imprisonment claim should also be affirmed on the merits. False imprisonment "involves the intentional confinement of another against the person's will." *Bocanegra v. Jakubowski,* 241 Cal.App.4th 848, 855 (2015). Here, there is no evidence that Officer Rodriguez ever restrained Appellants' freedom of movement by use of physical barriers, force, threats of force, or unreasonable duress. *See Collins v. Cnty of Los Angeles*, 241 Cal.App.2d 451, 459—60 (1966). The only occasion in which Appellants' freedom of movement was restricted was during the welfare check, which was

based on reasonable cause. SER-44, 92, 138—139, 141—145, 159—161, 181, 193, 217—218. Therefore, based on the foregoing, the district court's dismissal of Appellants' false imprisonment claim should be upheld.

**D. The District Court Properly Granted Summary Judgment in Appellees' Favor On Appellants' Invasion of Privacy/ Intrusion Claims**

Appellants submit that "LBPD Officers and Owens intentionally intruded into the private affairs of Mr. Grant and P.C." AOB, 49. Similar to other arguments, Appellants' paltry invasion of privacy argument is not supported by citations to the record and relies on inaccurate legal authority. AOB, 49; *see* Fed. R. App. P. 28(a)(9)(A). Thus, because Appellants' argument rests on a single conclusory sentence, unsupported by citations to the record or relevant legal authority, the Court should considered Appellants' argument on the issue abandoned. *See Rattlesnake Coal*, 509 F.3d at 1100.

The grant of summary judgment on Appellants' invasion of privacy and intrusion claim should also be affirmed on the merits. The tort of intrusion upon seclusion protects an individual against one "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." A defendant is subject to liability for invasion of privacy if "the intrusion would be highly offensive to a reasonable person." *Taus v. Loftus*, 40 Cal.4th 683, 724 (2007). To state an invasion of privacy claim, it must be plaintiff's right of privacy that is invaded, not that of someone else. *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1485 (1986). Further, consent is a defense to an invasion of privacy claim, even if it is improperly induced. *Sanchez-Scott v. Alza Pharmaceuticals*, 86 Cal.App.4th 365, 376 (2001).

Here, Ms. Brown was the sole lessee of the apartment at the time of the events alleged and gave her consent for the LBPD Officers to enter. 3-ER-142

[Sgt. Owens' BWC Video at 1:23-2:01]; SER-45, 93, 96 [Officer Rodriguez's BWC Video at 0:16-0:45], 146—149. As such, because Officer Rodriguez was given permission to enter the apartment where Appellants were residing, there can be no dispute that consent was provided. Accordingly, because consent serves as a complete defense, the district court's grant of summary judgment on Appellants' invasion of privacy and seclusion claim should be affirmed.

### E. The District Court Properly Granted Summary Judgment In Appellees' Favor on Appellants' Intentional Infliction Of Emotional Distress Claim

Appellants contend that "LBPD officers and Owens participated in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress, which were unconstitutional and was so extreme as to exceed all bounds of decadency usually tolerated in a civilized community." AOB, 49. This formulaic recitation of an intentional infliction of emotional distress ("IIED") claim lacks the same evidentiary and legal support as Appellants' other frivolous arguments. Appellants' one sentence argument lacks any citations to the record (Fed. R. App. P. 28(a)(9)(A) & (e)) and misstates the facts and holding in the cited legal authority. AOB, 50; *Wall v. County of Orange*, 364 F.3d 1107 (9th Cir. 2004) (Reversing a district court's grant of summary judgment in favor of a county police officer in a Section 1983 lawsuit involving an arrestee alleging excessive force and false arrest). In light of these deficiencies, this Court should consider Appellants' IIED claim abandoned. *See Sekiya,* 508 F.3d at 1200 ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present "appellant's contentions and the reasons for them.") (citing Fed. R. App. P. § 28(a)(9)(A)).

The grant of summary judgment on Appellants' IIED claim should also be

affirmed on the merits. A claim for IIED exists only when there is extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress. *McMahon v. Craig*, 176 Cal.App.4th 1502, 1515-1516 (2009). It must also appear that the defendant's conduct was unprivileged. *Ross v. Creel Printing & Publishing Co., Inc.*, 100 Cal.App.4th 736, 745 (2002).

Given the facts here, the Court can easily conclude that the Officers' actions during the encounter with Appellants were done with a legitimate law enforcement purpose and were not "so extreme" as to "exceed all bounds" of decency usually "tolerated in a civilized community." *See Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009). The Officers acted in a lawful manner and with a good-faith belief that they had the legal right to engage in the conduct, providing a privileged conduct defense. Officer Rodriguez's only actions were standing inside the apartment, outside the apartment, contact the Department of Children and Family Services to relay Mr. Grant's concerns, and at times discussing the situation with Mr. Grant and Ms. Brown. *See generally*, SER-96 [Officer Rodriguez's BWC Video]. As the district court aptly noted, "Officer Rodriguez made no actions, gestures, or other conduct that a reasonable jury could find extreme and outrageous." 1-ER-19. In light of the foregoing, the district court's grant of summary judgment on Appellants' IIED claim should be upheld.

### F. The District Court Properly Granted Summary Judgment In Appellees' Favor on Appellants' Negligence And Negligent Infliction Of Emotional Distress Claims

On appeal, Appellants contend that "LBPD Officers owed a legal duty of care to Mr. Grant and P.C." AOB, 50. Appellants barebone argument is unmeritorious and fails to state a plausible claim for negligence or negligent infliction of emotional distress ("NIED"). Appellants provide no citation to the

record and mislead Appellees and Court with erroneous summarizations of the cited legal authority. *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) (involving an appeal in a section 1983 action brought against city and police officers arising out of a shooting incident; no claims involving unconstitutional removal of children, negligence, or NIED); *Wallis*, 202 F.3d 1126 (no claims of negligence or negligent infliction of emotional distress raised or addressed on appeal). In light of these deficiencies, this Court should consider Appellants' negligence and NIED claims abandoned. *See Sekiya,* 508 F.3d at 1200.

The grant of summary judgment on Appellants' negligence and NIED claim should also be affirmed on the merits. Officer Rodriguez's conduct was reasonable as a matter of law. Under California Law, there are four elements to negligence: (1) duty, (2) breach, (3) causation, and (4) damages. *Conroy v. Regents of Univ. of Cal.*, 45 Cal.4th 1244 (2009). There is no evidence that Officer Rodriguez breached any duties owed to Appellants. In fact, Officer Rodriguez was authorized under state law to take P.C. into protective custody if "[t]here [were] conflicting custody order or conflicting claims to custody and the parties [could not] agree which party should take custody of the child." *Pen. Code* § 279.6(a)(3). If this course of action had been pursued, Officer Rodriguez would have then been permitted to, among other things, "[r]elease the child to the lawful custodian of the child." *Id.* at 279.6(b)(1). Given that Ms. Cephus had sole *de facto* physical and legal custody of P.C. and given that Mr. Grant had no documents establishing parentage, P.C. still would have been released to Ms. Cephus. SER-41—43, 45—46, 50, 52, 54—56, 58—74, 76—86, 93—94, 110, 112—114, 116—119, 121, 150, 167—169, 171—174, 182, 188, 190. Thus, because the Officers' actions were lawful and reasonable, the district court's grant of summary judgment in Appellees' favor on Appellants' negligence and NIED claims should be affirmed.

## CONCLUSION

For all of the foregoing reasons, Appellees respectfully request that the district court's order granting summary judgment for Appellees be upheld and the judgment affirmed as to all parties and all causes of action.

DATED: October 30, 2023

Respectfully submitted,

DAWN MCINTOSH, City Attorney

By: */s/ Matthew M. Peters*
MATTHEW M. PETERS
Deputy City Attorney
Attorneys for Defendants-Appellees
CITY OF LONG BEACH, *et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Numbers 22-56121, 22-56143**

The undersigned attorney or self-represented party states the following:

[x] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

DATED: October 30, 2023

Respectfully submitted,

DAWN MCINTOSH, City Attorney

By: */s/ Matthew M. Peters*
MATTHEW M. PETERS
Deputy City Attorney
Attorneys for Defendants-Appellees
CITY OF LONG BEACH, *et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**
**9th Cir. Case Numbers 22-56121, 22-56143**

I am the attorney or self-represented party.

**This brief contains 10,676 words**, excluding items exempted by Fed. R. App. P. 32(f). The brief's size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;

[ ] a party or parties are filing a single brief in response to multiple briefs; or

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

DATED: October 30, 2023

Respectfully submitted,

DAWN MCINTOSH, City Attorney

By: */s/ Matthew M. Peters*
MATTHEW M. PETERS
Deputy City Attorney
Attorneys for Defendants-Appellees
CITY OF LONG BEACH, *et al.*